IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TOWAMENCIN SUMNEYTOWN ARCT, LLC, BRIDGEWATER 202 ARCT, LLC AND WESTAMPTON WOODLANE ARCT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>TOWAMENCIN MANAGER, LLC, BRIDGEWATER TVC-GP, LLC, WESTAMPTON TVC-GP, LLC AND TFV ASSOCIATES INVESTORS, LP,<br><br>Defendants. | Civil Action No. _____<br><br>**COMPLAINT** |

**COMPLAINT**

Plaintiffs Towamencin Sumneytown ARCT, LLC ("ARCT Towamencin Member"), Bridgewater 202 ARCT, LLC ("ARCT Bridgewater Member") and Westampton Woodlane ARCT, LLC ("ARCT Westampton Member"; collectively, "ARCT Members" or "Plaintiffs") file this Complaint against Defendants Towamencin Manager, LLC ("TFV Towamencin Member"), Bridgewater TVC-GP, LLC ("TFV Bridgewater Member"), Westampton TVC-GP, LLC ("TFV Westampton Member") and TFV Associates Investors, LP ("TFV Investors"; collectively, "TFV Members" or "Defendants"). In support, Plaintiffs, on information and belief, allege as follows:

**PARTIES**

1. Plaintiff ARCT Towamencin Member is a Delaware limited liability company, with its principal place of business at 1401 Broad Street, Clifton, NJ 07013. Based on its membership, ARCT Towamencin Member is a citizen of Delaware, Florida, Maryland, New Jersey, New York, North Carolina, Rhode Island and Illinois.

2. Plaintiff ARCT Bridgewater Member is a New Jersey limited liability company, with its principal place of business at 1401 Broad Street, Clifton, NJ 07013. ARCT Bridgewater Member is a citizen of Delaware, Florida, Maryland, New Jersey, New York, North Carolina, Rhode Island and Illinois.

3. Plaintiff ARCT Westampton Member is a Delaware limited liability company, with its principal place of business at 1401 Broad Street, Clifton, NJ 07013. ARCT Westampton Member is a citizen of Delaware, Florida, Maryland, New Jersey, New York, North Carolina, Rhode Island, and Illinois.

4. Defendant TFV Towamencin Member is a Pennsylvania limited liability company with its principal place of business at 329 S. Main Street, Suite B, Doylestown, PA 18901. TFV Towamencin Member is a citizen of Pennsylvania.

5. Defendant TFV Bridgewater Member is a New Jersey limited liability company with its principal place of business at 329 S. Main Street, Suite B, Doylestown, PA 18901. TFV Bridgewater Member is a citizen of Pennsylvania.

6. Defendant TFV Westampton Member is a New Jersey limited liability company with its principal place of business at 329 S. Main Street, Suite B, Doylestown, PA 18901. TFV Westampton Member is a citizen of Pennsylvania.

7. Defendant TFV Investors is a Pennsylvania limited partnership, with its principal place of business at 329 S. Main Street, Suite B, Doylestown, PA 18901. TFV Investors is *not* a citizen of Delaware, Florida, Maryland, New Jersey, New York, North Carolina or Rhode Island.

8. ARCT Members and TFV Members are parties to the Amended, Restated and Consolidated Purchase Agreement, dated October 2, 2024 (the "Purchase Agreement"), attached as **Exhibit 1**.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000 exclusive of interest and costs.[1]

10. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and pursuant to Section 9.9(b) of the Purchase Agreement, which directs:

> Each Party irrevocably and unconditionally consents to submit to the exclusive jurisdiction of the federal and state courts located in Philadelphia, Pennsylvania (as applicable, the "***Chosen Court***"), for any Action arising out of or related to this Agreement . . .

*See* Exhibit 1 at § 9.9(b).

11. This Court has personal jurisdiction over Defendants by virtue of Defendants' actions directed in and towards Pennsylvania giving rise to the claims asserted in this Complaint, by virtue of Defendants' principal addresses, and pursuant to Section 9.9(b) of the Purchase Agreement, *see* directly above.

**STATEMENT OF FACTS**

**A. Background on the Parties**

12. ARCT Members and TFV Members *historically* jointly owned certain property-holding companies. Specifically, at execution of the at-issue Purchase Agreement – on October 2, 2024 – ARCT Towamencin Member and TFV Towamencin Member each held 50 percent interest in Towamencin Sumneytown Pike, LLC ("Towamencin LLC"); ARCT Bridgewater Member and TFV Bridgewater Member each held 50 percent interest in Bridgewater TVC-ARC LLC ("Bridgewater LLC"); and ARCT Westampton Member and TFV Westampton Member each held

---

[1] Although this action seeks declaratory relief, the ownership interests at-issue in this action are worth well over $75,000.

50 percent interest in KCA Westampton Phase II LLC ("Westampton LLC"; collectively, the "Property Holding LLCs").[2] *See* the Purchase Agreement (Ex. 1) at Recitals.

13. The Property Holding LLCs each hold certain commercial properties, respectively. The properties are at various stages of development, but each property is intended to be developed and leased to various national-brand restaurants and retailers – *e.g.*, Wawa, Inc., CVS Pharmacy, LLC and PJ Whelihan's Pub, Inc.

B. **Brief Relevant History of the Parties' Business Relationship**[3]

14. These three Projects were part of a larger portfolio of real estate development projects among ARCTRUST Investments, L.P. ("ARCT") and Thomas F. Verrichia (*i.e.*, TFV), and related and affiliate entities.

15. Notably, despite the fact that this larger business deal among ARCT and Mr. Verrichia, and related and affiliate entities was executed and commenced in January 2014, ARCT never realized its anticipated profit on the business deal. Rather, ARCT invested millions of dollars towards development of real estate projects, at the request and management of Mr. Verrichia, which investment value was never recovered. To date, ARCT has suffered losses on the deal.

16. ARCT and Mr. Verrichia jointly pursued at least twenty real estate development projects, each at the recommendation of Mr. Verrichia.

17. At a high-level, Mr. Verrichia acted to source, manage and develop each real estate project, with the advanced funds of ARCT. It was intended that each project site would be

---

[2] To be clear, and consistent with the facts contained in this Complaint, ARCT Members now own 100 percent of the at-issue Property Holding LLCs.

[3] The history of this matter is lengthy and labored, much of which Plaintiffs will not outline here. Nevertheless, certain of the parties' history is necessary to explain the backdrop to this action.

acquired, developed and leased to national-brand restaurants and retailers (as stated, by *e.g.*, Wawa, CVS, etc.).

18. Now over *eleven years* into the business deal, just roughly 25 percent of the pursued real estate projects reached acquisition and entered the second joint venture stage of the projects. The majority of projects were abandoned over time at monetary losses to ARCT.

19. This failure rate and the losses were problematic; but what was more problematic, and ARCT learned through series of litigations and legal actions, was Mr. Verrichia's mismanagement of the projects, and potential fraud and self-dealing.

20. By way of example, Mr. Verrichia and his related entities – as leverage to incentivize a third-party lender to execute a construction loan in favor of Mr. Verrichia's separate and wholly-owned project – agreed to refinance an ARCT project at a specified rate, and to pay the lender a closing fee on the refinance. Mr. Verrichia also gave the lender the first right to finance any future development on certain of ARCT's projects at a specified rate and fee.

21. Mr. Verrichia intentionally concealed and never disclosed to ARCT these self-dealing agreements, and ARCT learned of these self-interested deals only in receiving a subpoena from the lender issued in connection with a AAA Arbitration with Mr. Verrichia and certain of his entities.

22. By way of another example, Mr. Verrichia failed to disclose to, and in fact actively concealed from, ARCT that he incurred a more-than $200,000 bill for construction on a separate development project, and then misled ARCT into funding litigation efforts against the lender under the guise that Mr. Verrichia did not owe the money. This proved to be false.[4]

---

[4] Notably, the court made factual findings that rejected Mr. Verrichia's sworn testimony, and that he lacked credibility.

23. At present, Mr. Verrichia is embroiled in a number of litigations in Pennsylvania and New Jersey. Based on an action in New Jersey Superior Court, ARCT has come to learn that Mr. Verrichia supposedly uses shell companies to fraudulently move money to his own benefit, and to that of his wife. *SB PB Victory LP v. Thomas Verricchia et al.*, Consol. Dckt. No. L-287-23 (N.J. Super. Ct. L. Div. 2023). A number of Mr. Verrichia's entities are now in receivership, as is Mr. Verrichia's vacation home.

### C. Litigations and Efforts at Global Resolution

24. Against this backdrop, ARCT and its related entities wanted to conclude the business relationship with Mr. Verrichia, and to recover their value in the development project portfolio, or as much value as still remained.

25. After letters and talks with Mr. Verrichia failed to prove productive, ARCT and its related entities were forced to initiate a series of litigations against Mr. Verrichia and his entities, to seek monetary and declaratory judgments to recover value in the projects.

26. Based in a series of judgments issued by this District Court, and efforts to enforce those judgments, ARCT and its related entities took ownership and control of a series of real estate development projects that were formerly joint venture projects with Mr. Verrichia – projects located in Hatboro, Horsham, Warwick and Indiana, all in Pennsylvania.[5]

27. It was a long and arduous road to get to this point. To take ownership and control of the Hatboro, Horsham, Warwick and Indiana projects, ARCT was forced to initiate litigations,

---

[5] *See e.g., Indiana Oakland ARC, LLC v. Verrichia et al.*, Civ. A. No. 22-cv-02534 (E.D. Pa. 2022); *Indiana Oakland ARC, LLC v. Verrichia et al.*, Civ. A. No. 22-cv-02292) (E.D. Pa. 2022); *Horsham Blair Mill ARCT, LLC v. Horsham 1130 GP LLC et al.*, Civ. A. No. 22-cv-01082 (E.D. Pa. 2022); *Horsham Blair Mill ARCT, LLC v. TFV Investors Associates, LP et al.*, Civ. A. No. 23-cv-02745 (E.D. Pa. 2023); *Warwick Meyer ARCT, LLC v. Warwick TVC-GP, LLC et al.*, Civ. A. No. 22-cv-01083 (E.D. Pa. 2022); *Warwick Meyer ARCT, LLC v. TFV Investors Associates, LP et al.*, Civ. A. No. 23-cv-02772 (E.D. Pa. 2023).

obtain judgments from this District Court and enforce those judgments – including a number of motions for sanctions and civil contempt, and a Marshal's sale.

### D. The At-Issue Purchase Agreement

28. This backdrop sets the table for this action and the at-issue Purchase Agreement. ARCT seeks to conclude its business relationship with Mr. Verrichia and recover its value in the development project portfolio.

29. As of early-2024, ARCT had succeeded in obtaining judgments and/or ownership of the four previously-referenced projects – Hatboro, Horsham, Warwick and Indiana. However, three projects remained locked in joint ventures with Mr. Verrichia – the Towamencin, Bridgewater and Westampton projects (the three projects and/or LLCs at center of this action).

30. Despite the discord among ARCT and Mr. Verrichia and their related entities, the most efficient mechanism to conclude the Parties' real estate joint venture was a global sale agreement; as opposed to yet another series of litigations, which ARCT hoped to avoid. As a result, the parties executed the at-issue Purchase Agreement on October 2, 2024. *See* Purchase Agreement (Ex. 1).

31. The intent of the Purchase Agreement was *finality*, to conclude the parties' joint venture portfolio. To that end, the Purchase Agreement provided explicitly that time was of the essence, with a precise closing deadline of 5:00 PM EST on November 15, 2024, and also provided that the deal would automatically terminate if closing did not occur by that deadline. *See* Purchase Agreement ¶ 1.7 (defining aforementioned Closing Date), ¶ 8.1(b) ("[T]his Agreement shall immediately terminate if the Closing . . . has not occurred by the Closing Date."); ¶ 9.12 (reiterating that "[t]ime is expressly made of the essence with respect to each and every provision, obligations, and/or deadline of this Agreement.").

32. The deal was structured so that Mr. Verrichia's entities could purchase all of ARCT's entities' interest in the project portfolio for a price; and if Mr. Verrichia's entities failed to close on the purchase, *for any reason* other than ARCT's entities' breach, all of Mr. Verrichia's entities' remaining interest in the projects (namely, his 50 percent interest in the Project LLCs, respectively) automatically transferred to ARCT's relevant entities:

> 8.2  Effect of Termination
>
> . . .
>
> (b) If this Agreement is terminated pursuant to Section 8.1(b): (i) Sellers or their Affiliates will hold the Remaining JV Entities Assignments and all interest and rights in Towamencin, Bridgewater, and Westampton without restrictions, limitations or obligations to any other Transaction Party or Thomas F. Verrichia, of any kind; and (ii) Thomas F. Verrichia and/or his relevant entities (including any Transaction Party) release and waive any rights and claims relating to the Towamencin, Bridgewater, and Westampton Projects, and the related properties and assets thereof. For the avoidance of doubt, Sellers or their Affiliates will control and manage Towamencin, Bridgewater, and Westampton, and the related rights, properties and assets thereof, without restriction, and in their sole and exclusive discretion as the owners of Towamencin, Bridgewater, and Westampton; this includes the right to sell, assign or otherwise transfer Towamencin, Bridgewater, and Westampton, or any properties, rights or assets of Towamencin, Bridgewater, and Westampton, as Sellers see fit in Sellers' sole discretion.

*Id.* at § 8.2(b).

33. In this way, Mr. Verrichia's – *i.e.*, TFV Members' – interest in the Project LLCs was the security for the Purchase Agreement. If Mr. Verrichia failed to close on the purchase, TFV Members' interest in the Project LLCs, respectively, *automatically* transferred to the relevant ARCT Members.

34. Consistent with the terms of the Purchase Agreement, on execution of the deal papers on October 2, 2024, Mr. Verrichia provided to ARCT Members signed assignments

8

transferring TFV Members' interest to the ARCT entities (the "Assignments"), attached as **Exhibit 2**.

35. As even *further* security, and for the avoidance of all doubt, the Purchase Agreement further provides:

> 8.3 **Other Remedies**. For the avoidance of doubt:
>
> . . .
>
> (b) <u>Per Diem</u>. In the event that:
>
>> (i) this Agreement is terminated pursuant to <u>Section 8.1(b)</u> and: (A) any Buyer Party refuses, denies, or otherwise prevents or impedes the transferring or effectiveness of any of the Remaining JV Entities Assignments; . . . then in each instance, without prejudice to any of Sellers' other rights or remedies hereunder this Agreement, following Buyers' receipt of a written notice specifying any such breach and three (3) Business Days to cure the same:
>>
>>> A. Each of the Remaining JV Entities Assignments shall be dated as of, and take full force and effect as of, such termination date.

*Id.* at § 8.3(b).

36. Again, the intent of this mechanism was to avoid the need for litigation – the Assignments were already with the ARCT entities.

37. Mr. Verrichia and his entities, including TFV Members, failed to close by the time-is-of-the essence Closing Deadline of November 15, 2024. As a result, the Purchase Agreement was terminated automatically pursuant to Section 8.1(b) of the Purchase Agreement.

38. By operation of the Purchase Agreement, the Assignments took effect at the failed Closing Deadline and became valid and binding. As a result, ARCT Members now hold 100 percent interest in the Property Holding LLCs, without restrictions, and manage and control the related properties and projects.

39. Despite this, and despite the fact that ARCT Members hold the valid and binding Assignments, Mr. Verrichia and TFV Members continue to refuse to acknowledge ARCT Members' ownership and control of the development projects and properties.

40. ARCT Members sent a letter to Mr. Verrichia on November 21, 2024 confirming that the Purchase Agreement terminated at 5:01 PM on November 15, 2024 pursuant to Sections 8.1(b) and 8.2(b) of the Purchase Agreement. *See* November 21, 2024 Correspondence, attached as **Exhibit 3**. ARCT Members further confirmed that the Assignments are valid and binding, that ARCT Members hold "all interest and rights in [the Project LLCs] without restriction, limitations, or obligations," and "control and manage [the Project LLCs] . . . in their sole and exclusive discretion." *Id.* ARCT Members asked Mr. Verrichia to direct all communications relating to the Project LLCs to ARCT Members. Mr. Verrichia did not respond.

41. ARCT Members sent *another* email on April 7, 2025, and Mr. Verrichia again refused to sign the acknowledgments. *See* **Exhibit 4**.

42. For months ARCT Members have made efforts to manage and control the Property Holding LLCs and related development projects which they now own. Mr. Verrichia and TFV Members' refusal to acknowledge ARCT Members' rights hampers ARCT Members' efforts to move forward the development, and to effect the sale of the properties. Further, Mr. Verrichia's continued communications with vendors, lenders and tenants creates confusion in the market as to ownership and control for these properties and projects.

43. For this reason, ARCT entities are now forced to *again* bring an action against Mr. Verrichia's entities to enforce ARCT Members' rights and obtain a declaratory judgment.

## COUNT I
### Declaratory Judgment Under the Agreement
### (Against All Defendants)

44. ARCT Members allege and incorporate here by reference all preceding paragraphs of this Complaint.

45. As detailed above, the Purchase Agreement is a valid and binding contract among the parties here.

46. ARCT Members are not in default of any obligations under the Purchase Agreement.

47. As stated above, Defendants TFV Members failed to close on the Purchase Agreement by the mandatory time-is-of-the-essence Closing Deadline of 5:00 PM EST on November 15, 2024.

48. By operation of the Purchase Agreement and Defendants failure to close by their deadline, on November 15, 2024 the Assignments took effect and became valid and binding, transferring all interest in the Property Holding LLCs to ARCT Members.

49. The Assignments confirm that:

  (i) ARCT Members are the sole 100 percent owners of their respective Property Holding LLC;

  (ii) ARCT Members are entitled to control and manage their respective Property Holding LLC, along with the related rights, properties and assets thereof (including the right to sell, assign, or otherwise transfer ownership stakes), without restriction, and in their sole and exclusive discretion as the respective owners of the Property Holding LLC; and

  (iii) Defendants TFV Members have no rights whatsoever in any of the Property Holding LLC.

50. Nonetheless, Defendants TFV Members continue to refuse to acknowledge ARCT Members' ownership and control of the Property Holding LLCs, and interfere in ARCT Members' management, control and sale efforts.

51. As a result, there is a present, actual and justiciable controversy between ARCT Members and Defendants relating to the application of the Purchase Agreement and the Assignments.

52. ARCT Members have a direct, substantial and present interest in this determination. ARCT Members are currently attempting to operate the Property Holding LLCs and related development projects, and are marketing them for sale. Defendants TFV Members' refusal to acknowledge the Assignments interferes with ARCT Members' efforts to manage and sell the properties.

53. As a result, Plaintiffs ARCT Members seek a declaratory judgment that, consistent with the Purchase Agreement and Assignments:

   (i) the Assignments are effective, valid and binding;

   (ii) ARCT Members are the sole 100 percent owners of their respective Property Holding LLCs – i.e., Towamencin Sumneytown ARCT, LLC owns 100 percent of Towamencin Sumneytown Pike, LLC; Bridgewater 202 ARCT, LLC owns 100 percent of Bridgewater TVC-ARC LLC; and Westampton Woodlane ARCT, LLC owns 100 percent of KCA Westampton Phase II LLC

   (iii) ARCT Members are entitled to control and manage their respective Property Holding LLCs, along with the related rights, properties, and assets thereof (including the right to sell, assign, or otherwise transfer ownership stakes), without restriction, and in their sole and exclusive discretion as the respective owners of the Property Holding LLCs; and

   (iv) Defendants TFV Members have no rights whatsoever in any of the Property Holding LLCs.

Wherefore, Plaintiffs request entry of judgment on Count I against Defendants and that the Court award the requested declaratory relief as outlined herein.

Dated: April 23, 2025            Respectfully submitted,

                                 By: *s/ Scott M. Vernick*
                                   Scott M. Vernick (ID No. 318880)
                                   Daniel Selznick (ID No. 326040)

                                   **DUANE MORRIS LLP**
                                   30 S. 17th Street
                                   Philadelphia, PA  19103
                                   (215) 979-1922
                                   e:  smvernick@duanemorris.com
                                           dgselznick@duanemorris.com

                                   *Attorneys for Plaintiff*